## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| Coral Gibson, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | Civil Action No.  1:24-cv- 1188 |
| | § | |
| FCA US LLC | § | |
| | § | |
| *Defendant*. | § | |

## PLAINTIFF'S COMPLAINT

**To the Honorable Judge of Said Court:**

COMES NOW, Coral Gibson (hereinafter referred to as "Plaintiff"), and respectfully files this Complaint against FCA US LLC (hereinafter referred to as "FCA"), and in support hereof would state and show the following:

### I. Parties

1.     Plaintiff Coral Gibson is an individual. She is a citizen of the State of Texas and resides in Austin, Texas.

2.     Defendant FCA US LLC ("FCA" stands for Fiat Chrysler Automobiles) is an entity formerly known as Chrysler Group LLC, incorporated in Delaware, with its principal place of business in Auburn Hills, Michigan. Defendant's sole member is FCA North American Holdings, LLC, an entity incorporated in Delaware with its principal place of business in New York. FCA North America Holding LLC's sole member is Fiat Chrysler Automobile N.V., a publicly traded company incorporated in the Netherlands with its principal place of business in London. Service

of process upon this Defendant may be had by serving its registered agent of service, **CT Corporation System, at 1999 Bryan Street, Suite 900 Dallas, Texas 75201**.

## II. Jurisdiction

3.      This Court has jurisdiction over the lawsuit under the provisions of 28 U.S.C. § 1332.

4.      The parties to this lawsuit are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

5.      Venue is proper in this division because the accident made basis of this lawsuit occurred in this division and Plaintiff resides in this division.

## III. Facts

6.      On or about May 12, 2023, Plaintiff was the driver of a 2015 Jeep Cherokee (VIN: 1C4PJLCB7FW771118) ("Subject Vehicle").

7.      The Subject Vehicle was traveling eastbound on US-290 in Hays County, Texas.

8.      Another vehicle was traveling westbound on US-290 when its driver failed to control his vehicle, entered into the eastbound lanes of US-290, and struck the Subject Vehicle.

9.      The Subject Vehicle was designed by Defendant FCA US LLC.

10.      The Subject Vehicle was manufactured by Defendant FCA US LLC.

11.      The Subject Vehicle was marketed by Defendant FCA US LLC.

12.      The Subject Vehicle was also assembled and tested by Defendant FCA US LLC.

13.      Despite being properly seated and properly wearing the available seat belt, Coral Gibson sustained serious injuries when the Subject Vehicle failed to protect her because it violated several crashworthiness principles.

## IV. Crashworthiness Overview

14.     Crashworthiness is the science of preventing or minimizing injuries or death following an accident through the use of a vehicle's various safety systems.[1]

15.     There are five (5) recognized crashworthiness principles in the automobile industry/throughout the world. They are as follows:

     1.     Maintain survival space;

     2.     Provide proper restraint throughout the entire accident;

     3.     Prevent ejection;

     4.     Distribute and channel energy; and

     5.     Prevent post-crash fires.

16.     When the National Highway Traffic Safety Administration (NHTSA) created the Federal Motor Vehicle Safety Standard (FMVSS) in the late 1960's, the preamble to the safety standards included a crashworthiness definition similar to that used above, "that the public is protected against unreasonable risk of crashes occurring as a result of the design, construction, or performance of motor vehicles and is also protected against unreasonable risk of death or injury in the event crashes do occur."

17.     The National Transportation Safety Board (NTSB) has also stated that, "Vehicle crashworthiness refers to the capacity of a vehicle to protect its occupants from crash forces. This

---

[1] In any crashworthiness case, the distinction between the cause of an accident versus the cause of injuries is an important one. One of the best analogies is the case of the Titanic. While the cause of hitting the iceberg has been the subject of much debate (inattentiveness, the captain may have been drinking, they were going too fast, etc.), there is no question that every passenger who entered a lifeboat that night survived, while 99% of those who went in the water died. Accordingly, had the Titanic had enough lifeboats on board (i.e., the boat's "safety systems"), 100% of the people onboard would probably have survived. So, the cause of the sinking (the accident) is irrelevant vis-à-vis why everyone died. What's important is how the safety systems worked (or didn't work) following the accident.

Case 1:24-cv-01188-DII   Document 1   Filed 10/04/24   Page 4 of 16

protection—which is achieved, in part, by vehicle structure—includes maintaining a survival space around the occupant, retaining the occupant within that space, and reducing the forces applied to the occupant."

18.   Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails. For example, in a rollover, if the roof collapses such that no survival space is left, it does not matter what kind of restraint system, glass, fuel system, or energy absorbing system is used, because these systems have been rendered moot.

## V. Duty to Make a Safe Vehicle

19.   For decades, automobile manufacturers have been telling the general public and others how important it is to make safe vehicles.

20.   For instance, in 1993, General Motors stated that "Safety isn't one thing. It's everything." Mary Barra, CEO of General Motors, testified to Congress in 2014 that, "Our customers and their safety are at the center of everything we do." Jeff Boyer, Vice-President of Global Vehicle Safety at General Motors, has stated that "Nothing is more important than the safety of our customers in the vehicles they drive."

21.   General Motors has also stated in the past that, "The rich don't deserve to be safer … Isn't it time we realized safety is not just for the pampered and the privileged? Safety is for all."

22.   Lee Iacocca, former President of Ford Motor Company stated, while President and CEO of Chrysler, that "Every American has the right to a safe vehicle." Gerald Greenwald, chairman of Chrysler, then sent a letter to every Chrysler dealership in 1988 stating that Chrysler intended to honor that right.

Plaintiff's Complaint                                                                                         Page 4 of 16

23.    In 2012, Volvo stated that, "Technologies for meeting the goal of zero injuries and fatalities are basically known today – it is a matter of how to apply, finance, distribute and activate."

24.    BMW has stated that BMW vehicles are designed to minimize the effects of accidents. BMW has also stated that the cornerstone of BMW's design philosophy is "Safety – during and after an accident."

25.    Honda believes that safety is for everyone, including for other vehicle occupants and for pedestrians.



26.    Hyundai has said that, "At Hyundai, we believe that of all the things an automobile is designed to do, it must make the protection of its occupants an unwavering priority."

27.    Hyundai has also stated that Hyundai's "commitment to safety can be seen throughout every automobile we build. So, should an accident occur, you can rest assured that you're surrounded by state-of-the-art safety engineering and numerous features that have all been proven to help minimize the effects of it."

28.    In 2008, Hyundai said, "SHOULDN'T YOUR SAFETY BE AN AUTOMAKER'S TOP PRIORITY? We think so." Hyundai also said, "you can never be too safe."

29.   Kia, which is owned by Hyundai, has stated that in designing and testing its vehicles, there's nothing Kia considers more important than safety.

30.   Kia has stated that it strives to achieve crashworthiness results that far exceed those required by law.

31.   Kia has said that no one can predict a collision occurring, but you can trust a Kia vehicle to protect you should the unforeseen happen.

32.   Kia has further stated that Kia works tirelessly to ensure that every safety system on its vehicles is designed to help people handle the unexpected.

33.   In 1991, Toyota said that "Toyota engineers are faced with making all vehicles as safe as humanly possible."



34.   As far back as the 1930s, Ford has been touting to the public how much it cares about safety. Indeed, in 1934, Ford stated that, "Safety is the most desirable of all the qualifications that the car of today must have."

35.   Since that time, for decades, Ford has been representing to the public how its cars are safe and how consumers should trust Ford when it comes to safety. For instance, the following are some examples of Ford statements that it has made in the past:



**YOUR SAFETY IS OUR TOP PRIORITY.**

36. Ford has also admitted that it has a moral obligation to reduce the risk of injury to consumers:



37. In 2002, Mitsubishi stated, "Your safety, and the safety of your passengers, has always been a primary concern of Mitsubishi engineers."

38. Another example is the following statement regarding safety from Mitsubishi:

**A clear direction for the development and manufacturing of Mitsubishi Motors vehicles**

The cars that Mitsubishi Motors will manufacture will embody two major concepts: driving pleasure and safety. Mitsubishi Motors will manufacture cars that deliver superior driving performance and superior levels of safety and durability, and as such, those who use them will enjoy peace of mind.

39.   Regarding safety in Mitsubishi vehicles, Mitsubishi has also said that, "We believe you can't be over-prepared for the unexpected."

40.   Mazda has stated that "since drivers are human beings are fallible, Mazda offers a range of technologies which help to prevent or reduce the damage resulting from an accident."

41.   Below is an advertisement from Mazda wherein Mazda makes the comment that they have made every side of their vehicles safe:



42.   Mazda has stated that when it comes to safety, you can never go too far.

43.   Because every American has the right to a safe vehicle, because safety is for all, and because technologies for meeting the goal of zero injuries and fatalities are basically known today, it is incumbent upon auto manufacturers to investigate and find out what other automakers are doing with regards to safety and to apply those same methods or technology to their own vehicle.

44.    Furthermore, an automaker cannot choose to use safer technology in Europe, Australia, Japan, Korea, or some other country and refuse or fail to offer that same safety technology to consumers in America.

45.    It is further incumbent upon auto manufacturers to protect consumers by using knowledge that a manufacturer has acquired over decades and decades of vehicle design, testing, and reverse engineering of other manufacturers' vehicles.

46.    In fact, insofar as society permits vehicle manufacturers to operate in such a way that they are permitted to sell highly complex, potentially dangerous, and also potentially highly profitable products on the market, manufacturers have a duty to do their very best to ensure that the vehicle will not be harmful to buyers, their households, or third parties.

47.    This is cemented by the fact that every state of the United States has case law which holds that every person has a duty to exercise reasonable care to avoid a foreseeable risk of injury to others.

## VI. Causes of Action as to Defendant FCA US LLC

48.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

49.    Defendant FCA LLC is in the business of designing, manufacturing, testing, assembling, marketing and/or distributing vehicles, including the Subject Vehicle.

### A. Count One: Strict Liability and Defective Design/Manufacture/Failure to Warn

50.    Defendant designed, manufactured, tested, assembled, marketed, and/or sold the Subject Vehicle that caused the serious injuries and damages to Plaintiff.

51.    The Subject Vehicle was defective and unreasonably dangerous for its intended use.

52.    The Subject Vehicle was defective at the time it left Defendant's control.

53. Reasonable consumers would not have been aware of the defective condition of the Subject Vehicle.

54. Plaintiff was not aware of the defects in the Subject Vehicle.

55. The serious injuries to Plaintiff, complained of herein, occurred because the Subject Vehicle was defective and unreasonably dangerous.

56. As detailed herein, the Subject Vehicle contains multiple design defects, Defendant has committed multiple acts of engineering negligence and has created false, misleading and/or deceptive marketing intended to lure consumers.

57. The Subject Vehicle was defective and unreasonably dangerous, Defendant was strictly liable, negligent and Defendant misrepresented the safety of the Subject Vehicle in the following, non-exhaustive list of ways:

   a. The Subject Vehicle violated consumer expectation;
   b. The Subject Vehicle violated principles of crashworthiness;
   c. The Subject Vehicle failed to provide adequate protection in a narrow frontal offset;
   d. The Subject Vehicle failed to provide narrow frontal offset countermeasures;
   e. The Subject Vehicle failed to provide proper restraint;
   f. The Subject Vehicle allowed the driver to bypass the front airbag;
   g. The driver bypassed the front airbag because the airbag shifted inboard;
   h. The Subject Vehicle violated Defendant's internal performance standards;
   i. The Subject Vehicle was not properly tested;
   j. The Subject Vehicle was not properly subjected to finite element modeling;
   k. The Subject Vehicle was not subjected to proper engineering;
   l. The Subject Vehicle was certainly not state of the art as marketed;
   m. The Subject Vehicle failed to hold paramount the safety of the public;
   n. The Subject Vehicle failed to contain the most current safety related technology;
   o. Defendant touted how everyone deserves to be safe;
   p. Defendant touted that safety should not depend on how much a vehicle costs;
   q. Defendant touted that everything they do centers around safety;

r.   Defendant touted that your safety is our utmost responsibility;

s.   Defendant touted that for too long it had delayed implementation of safety features, but that mindset was over;

t.   Defendant bragged, touted, and marketed its vehicles as being safe, state of the art, engineered to be the best, and engineered to protect families;

u.   Defendant bragged that it's an industry leader in testing;

v.   The ads, commercials, and/or marketing material turned out to be false, misleading, and/or deceptive in the opinion of Plaintiff after this accident was over;

w.   The Subject Vehicle violated Defendant's core design principles, marketing principles, and safety principles that it has espoused for decades;

x.   Defendant has said that building safe vehicles is the most important thing we do;

y.   Defendant has said that automobile safety is the foundation of its automobile manufacturing;

z.   Defendant has said that we have built a storehouse of safety technology since our first vehicle was built;

aa.  Defendant has said that safety is one of our foremost concerns;

bb.  Defendant has said that safety is always on our mind;

cc.  Defendant has said that it is fully aware of its responsibility to produce vehicles with the best overall safety possible;

dd.  Defendant has said that it works hard to stay at the cutting edge of technology;

ee.  Defendant has said that it believes that safety is fundamental for making vehicles;

ff.  Defendant has said that we always work to improve by putting forth new ideas and making the best of our abilities;

gg.  Defendant has pledged to consumers that we will have continual improvement, that we will learn from our mistakes and that we need to do better;

hh.  Defendant has touted that no matter who you are and what you drive, everyone deserves to be safe;

ii.  Defendant has stated that safety is of paramount importance;

jj.  Defendant has stated that everything we do is to ensure occupant safety; and/or

kk.  Defendant violated consumer expectations.

58.   The foregoing defects, negligence, and misrepresentation were the direct, substantial, producing, and/or proximate cause of the serious injuries and damages to Coral Gibson.

*B. Count Two: Negligence*

59.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

60.    In addition to and/or in the alternative to the product liability claims asserted herein, Defendant was negligent in the design, manufacture, testing, assembly, marketing, and/or distribution of the Subject Vehicle.

61.    Companies that are in the business of designing, testing, manufacturing, marketing, distributing and selling products are never allowed to needlessly endanger consumers.

62.    Defendant owed a duty to use reasonable care in the design, manufacture, testing, assembly, marketing and/or distribution of the Subject Vehicle.

63.    Defendant failed to use reasonable care when they designed, manufactured, tested, assembled, marketed, distributed and/or sold the Subject Vehicle, and consequently put a product on the market that was unreasonably dangerous for its intended or reasonably anticipated use as discussed herein.

64.    In designing a vehicle, efforts should be made by manufacturers to identify potential risks, hazards and/or dangers that can lead to serious injury or death.

65.    Once potential risks, hazards, and/or dangers identified, then the potential risks, hazards, or dangers should be eliminated if possible.

66.    If the potential risks, hazards, and/or dangers cannot be eliminated, then they should be guarded against.

67.    If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

68.    A company is negligent where the company fails to conduct a proper engineering analysis that would help it to identify potential risk, hazards, and/or dangers that could seriously injure someone.

69.    As noted earlier, most (if not all) engineering associations in the United States (and around the world) have a code of ethics. The Number 1 fundamental canon of ethics for almost all engineers is to "hold paramount the safety, health, and welfare of the public."

70.    Accordingly, since paramount means "superior to all others", all vehicle engineers have to hold the safety, health, and welfare of the public as their highest considerations when they design vehicles. Indeed, General Motors, for instance, has admitted under oath that its engineers have and hold paramount the safety, health, and welfare of the public, and/or dangers that can lead to serious injury or death.

71.    With respect to the Subject Vehicle, based upon information and/or belief, the Subject Vehicle was not subjected to rigorous engineering analysis.

72.    With respect to the Subject Vehicle, based upon information and/or belief, the Subject Vehicle was not properly tested and analyzed to determine what countermeasures were needed to prevent serious injuries to occupants in a narrow frontal offset accident.

73.    Based upon information and/or belief, Defendant either knew or should have known about advanced safety features used in Europe, Australia, Japan or foreign markets and chose not to offer those safety features to American consumers.

74.    Defendant's safety philosophy and design philosophy are utilized in various model vehicles and parts, including ones sold in foreign markets.

75.    When Defendant designed the Subject Vehicle, Defendant did not reinvent the wheel. Defendant used (or should have used) an enormous amount of human capital which had been

acquired from numerous different engineers who had worked on many prior vehicles. This knowledge would have been (or should have been) utilized in different aspects of the designs of the vehicle to make the Subject Vehicle safer in foreseeable accidents such as what occurred in this case.

76.   Defendant is currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the Subject Vehicle. Defendant is also in possession of what, if any, engineering analysis was performed.

77.   However, it is expected that after all these materials are produced in discovery and/or after Defendant's employees and corporate representatives have been deposed, additional allegations may come to light.

78.   Lastly, the materials from other models, years, and foreign markets will provide evidence regarding what Defendant knew, when they knew it, and about what was utilized or not utilized as well as the reasons why.

79.   The foregoing acts and/or omissions, defects, misrepresentations and/or negligence of Defendant was the producing, direct, proximate, and/or legal cause of the serious injuries and damages to Plaintiff.

### C. Count Three: Misrepresentation

80.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

81.   Defendant has misrepresented that safety must come first.

82.   Defendant has misrepresented that it has an obligation to protect vehicle occupants in the best way possible should the worst-case scenario arise.

83.   Specifically, for decades Defendant has touted the safety of its vehicles.

84.    The Subject Vehicle failed to possess all of the state-of-the-art safety equipment qualities that the Defendant has touted for decades.

85.    The purchaser of the Subject Vehicle justifiably relied on the representations made by the Defendant in purchasing the Subject Vehicle.

86.    The foregoing acts and/or omissions, defects, and/or negligence of Defendant was the producing, direct, proximate, and/or legal cause of the serious injuries and damages to Plaintiff.

## VII. Damages to Plaintiff

87.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

88.    Plaintiff seeks recovery for all damages under any applicable statute and/or common law of the State of Texas.

89.    As a result of the acts and/or omissions of the Defendant, Plaintiff has suffered:

     a.    Physical pain and suffering in the past and future;
     b.    Mental anguish in the past and future;
     c.    Disfigurement in the past and future;
     d.    Physical impairment in the past and future;
     e.    Medical expenses in the past and future;
     f.    Past and future lost wages;
     g.    Loss of earning capacity in the past and future; and
     h.    Loss of household services in the past and future.

90.    Plaintiff seeks unliquidated damages in an amount that is within limits of the Court.

91.    Plaintiff further seeks pre-judgment and post-judgment interest as allowed by law.

92.    Plaintiff reserves the right to amend this Complaint by adding additional counts as discovery progresses.

93.    The above and foregoing acts and/or omissions of the Defendant, resulting in the serious injuries to Plaintiff, have caused actual damages to Plaintiff in excess of the minimum jurisdictional limits of this Court.

## VIII. Prayer

94.   For the reasons presented herein, Plaintiff prays that Defendant be cited to appear and answer, and that upon a final trial of this cause, Plaintiff recovers judgment against Defendant for:

   a.   actual damages;
   b.   prejudgment and post-judgment interest beginning May 12, 2023;
   c.   costs of suit; and
   d.   all other relief, general and special, to which Plaintiff is entitled to at law and/or in equity, and/or which the Court deems proper.

Respectfully submitted,

**The TRACY firm**


  /s E. Todd Tracy
E. Todd Tracy (Attorney-in-Charge)
State Bar No. 20178650
TTracy@vehiclesafetyfirm.com
Garrett D. Rogers
State Bar No. 24110295
Grogers@vehiclesafetyfirm.com
4701 Bengal Street
Dallas, Texas 75235
(214) 324-9000 – Phone
(972) 387-2205 – Fax

**Attorneys for Plaintiff**